UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MESHAUN WASHINGTON**                     **CIVIL ACTION**

**VERSUS**                                 **NO. 09-6058**

**MARLIN N. GUSMAN, ET AL.**               **SECTION: "A" (4)**

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.    Factual Summary**

   **A.    The Complaint**

The plaintiff, Meshaun Washington ("Washington"), is incarcerated in the Orleans Parish Prison ("O.P.P.") in New Orleans, Louisiana, and has been sentenced to serve eight (8) years. He filed this *pro se* and *in forma pauperis* complaint against former Orleans Parish Criminal Sheriff Marlin Gusman (incorrectly identified as "Marlen Gusmman") and Richard Stalder (incorrectly identified as "Richard Starlin"), the Secretary of the Department of Corrections ("D.O.C.").

Washington alleges that the prison facility does not adhere to the inmate grievance procedures. According to Washington, although he is a D.O.C. inmate, he is serving time at the Orleans Parish Prison ("O.P.P.")  He alleges that while housed at the O.P.P., he is not able to participate in any job or educational program. He complains that  the prison does not have a law library. He complains that he submitted a request using the grievance procedure about being transferred to the D.O.C., which presumably has the type of programs that Washington would like to participate in. However, he was advised that he would not be transferred even though he is a D.O.C. Inmate.

Washington alleges that he seeks the same opportunities that are available to other inmates of the D.O.C. He complains that both the Sheriff of the Orleans Parish Prison, Marlin Gusman, and the Secretary of the Department of Corrections, Richard Stalder, are violating his constitutional right as a D.O.C. inmate. He would like the Court to investigate his allegations and  transfer him to the D.O.C.

### B.     Grievance Submissions

On April 1, 2009, Washington  filed Grievance No. 613383 in which he requested that he be transferred to a D.O.C. facility and the opportunity to be placed in a substance abuse rehabilitation program. He also requested the opportunity to participate in a work release program. That same day, a response was issued by C. Golini indicating that Washington's complaint was not grievable. Golini also noted that Washington would not be going to the Department of Corrections.

On July 7, 2009, Washington submitted another grievance, No. 618862, in which he requested that Major C. Jones transfer him to another D.O.C. prison so he could use the library and he could exercise his freedom of religion by going to a D.O.C. church. On that same date, the

grievance was deemed not a grievance by E. Carr. Carr further responded indicating that they have notified the Department of Corrections of his response.

On July 10, 2009, Washington filed Grievance No. 619138 indicating that he wanted to be transferred to a D.O.C. facility. Upon assessment, the complaint was deemed non-grievable by D. Robinson who advised him to write directly to the D.O.C.

## II.  Standard of Review

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.     Claims Against Sheriff Gusman**

Washington alleges that Sheriff Gusman should be held liable because his employees have violated his constitutional rights by denying his request for a transfer. Broadly construing his Complaint, he alleges that Gusman should be held liable as the supervisory official of the Orleans Parish Prison.

A supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

Washington has not alleged that Sheriff Gusman was involved in any way with the actions about which he complains. An official is deliberately indifferent to an inmate's safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Washington does not allege that Gusman was at all involved in the actions about which he complains. In fact, he alleges no personal involvement to maintain a claim against Sheriff Gusman. The claims against Sheriff Gusman should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

## IV. Richard Stalder

Washington also named Richard Stalder, the Secretary of the Department of Corrections. He does not set forth specific allegations against Stalder except for the rather generalized assertion that Stalder is violating his constitutional rights.

### A. Official Capacity

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981). A state actor sued in his or her official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Instead, the action would be considered one against the employer, in this case, the D.O.C. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978). The D.O.C. is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401. For Eleventh Amendment purposes, the D.O.C. is considered an arm of the state since any judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985). Therefore, suit against Stalder in his official capacity is a suit against the State of Louisiana, which is prohibited by the Eleventh Amendment. *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. Oct. 18, 2000).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own state. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir.

1986). However, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Washington's claims against Stalder in his official capacity are frivolous, fail to state a claim for which relief can be granted, seeks relief against an immune defendant and therefore must be dismissed pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

### B. Individual Capacity

Although Washington did not state he was asserting a claim against Stalder in his individual capacity, to the extent he intended to do so, this claim is also frivolous. Washington seeks to hold Stalder liable as a supervisory official at the D.O.C.

As described in Section III, above, supervisory officials cannot be held liable pursuant to Section 1983 under any theory of *respondeat superior*. *See Alton*, 168 F.3d at 200. Further, a state actor can only be liable under Section 1983 if that person was personally involved in the acts which deprived the Plaintiff of their constitutional rights or a causal connection exists between an act of that official and the alleged violation. *Douthit v. Jones*, 641 F.2d at 346.

In this case, Washington has not alleged that Stalder was directly involved in the allegations contained in the Complaint. He has not alleged or suggested in any way that Stalder promulgated a policy or custom which led to the denial of his request. He has failed to state a claim for supervisory liability against Secretary Stalder and therefore the claims should be dismissed as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

**V.     Transfer to D.O.C. Facility**

Washington's main request is for a transfer to a D.O.C. facility where he believes he should be housed. He wants access to the same privileges enjoyed by other D.O.C. inmates, which he claims are not available to him at O.P.P. He requested a transfer from the prison officials through the grievance process. His requests, however, were found non-grievable thereby falling outside of the administrative grievance process and the exhaustion requirement of the Prison Litigation Reform Act. The Court will therefore address his claims.

**A.     Due Process Considerations**

Washington contends that he should be transferred from O.P.P. to a D.O.C. facility because he would like to participate in a work release and rehabilitation program which are not available at O.P.P. He contends that O.P.P. has determined that he is not eligible to participate in either its work release or rehabilitation programs.

It is well settled that the Due Process Clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute § 15:566(B) sets forth the exceptions under which prisoners convicted of state criminal offenses are to be sent to D.O.C. facilities from parish jails.[1] In addition,

---

[1]La. Rev. Stat. Ann. § 15:566(B) provides:

B. The sheriff or his duly qualified deputy, within thirty days of the date upon which sentence to

La. Rev. Stat. Ann. § 15:824, authorizes the Director of Corrections to decide which penal institution an inmate should be delivered or transferred.[2] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (La. Rev. Stat. Ann. § 15:824(A), (B) does not give D.O.C. prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

---

imprisonment at hard labor has been imposed, shall deliver the prisoner to the state correctional institution designated by the Department of Corrections, unless:
(1) The governor shall have reprieved said prisoner; or
(2) The prisoner is retained in the parish pursuant to R.S. § 15:824(B) or R.S. § 15:832; or
(3) The prisoner has been admitted to post-conviction bail; or
(4) The prisoner has obtained an order of appeal and the secretary of the Department of Corrections agrees to take custody of the prisoner. In other cases in which an order of appeal is obtained, the sheriff shall deliver the prisoner to the department within fifteen days of the date upon which the highest court of the state to which the prisoner may appeal as of right has affirmed the conviction and sentence. If the prisoner has filed a timely application for rehearing, the sheriff shall deliver the prisoner within fifteen days of the date upon which the rehearing is denied. Application for writs of certiorari or review to the state supreme court shall not prevent transfer under the provisions of this Subparagraph; or
(5) The court, for good cause, stays for a specified period a transfer to the Department of Corrections pursuant to Paragraph (4) above.

[2]La. Rev. Stat. Ann. §15:824(A) and (B) provides in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.
B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

The State of Louisiana, by its broad discretionary statutes, has not created a protected liberty interest in being housed in a particular prison or being transferred from a Parish prison to a D.O.C. facility, or vice versa. *Santos*, 1996 WL 89260 at *4. The Court therefore recommends dismissal of Washington's claim seeking transfer from O.P.P. to a D.O.C. facility as legally frivolous and for failure to state a claim for which relief can be granted.

**B.     Equal Protection**

Washington contends that he has been denied equal protection of the law because he is a D.O.C. prisoner in a Parish prison who is being treated differently than D.O.C. inmates in D.O.C. prisons. He contends that inmates in the physical custody of O.P.P. are not entitled to participate in the work release program at O.P.P. and there are no education programs.[3] However, if he were in the custody of a D.O.C. facility, he would be permitted to participate in these programs.

The heart of an equal protection claim, however, is that similarly situated classes of persons are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Lee v. Washington*, 390 U.S. 333, 334 (1968); *Timm v. Gunter,* 917 F.2d 1093, 1103 (8th Cir. 1990). The Supreme Court has explained that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631 (1996).

---

[3]Louisiana law authorizes its prisons to conduct work release programs in which inmates work for free-world employers at that employer's workplace. La. Rev. Stat. Ann. § 15:711. Revised Statute § 15:711 specifies the only kind of work release program legally authorized for all parish prisons in the state (except those in Jefferson Davis Parish which has its own statutory work release program). The only inmates eligible for such a program are those convicted of non-violent crimes. La. Rev. Stat. Ann. § 15:711(G). The purpose of the program is to prepare inmates upon release from prison to function as responsible, self-sufficient members of society.

It is well settled that neither prisoners nor indigents constitute a suspect class for purposes of evaluating whether claims violate the Equal Protection Clause of the Fourteenth Amendment. *See Harris v. McRae*, 448 U.S. 297, 323 (1980); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997). Therefore, Washington has failed to allege that he is a member of a protected class. *See Village of Arlington Heights*, 429 U.S. at 265; *Wolff*, 418 U.S. at 556; *Lee*, 390 U.S. at 334.

When a suspect class is not implicated, the court must determine whether the alleged discrimination is "'patently arbitrary and bears no rational relationship to a legitimate governmental interest.'" *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quoting *Young v. United States Parole Comm'n*, 682 F.2d 1105, 1109 (5th Cir. 1982)). Under this standard, if the governmental goals are legitimate and the classification adopted is rationally related to the achievement of these goals, the government action is not so arbitrary as to violate Equal Protection. *Richardson v. Belcher*, 404 U.S. 78, 84 (1971).

It is well settled that prisoners have no constitutional right to participate in educational or rehabilitation programs where no such programs exist where they are housed. *Beck v. Lynaugh*, 842 F.2d 759 (5th Cir. 1988); *Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977), *rev'd in part on other grounds*, *sub nom*, *Alabama v. Pugh*, 438 U.S. 781 (1978); *Burnette v. Phelps*, 621 F. Supp. 1157, 1159 (M.D. La. 1985). There is also no federal constitutional right for a prisoner to expect to participate in a prison educational or rehabilitation programs. *See Burnette*, 621 F. Supp. at 1159 (quoting *Newman*, 559 F.2d at 292). Therefore, Washington's claim is based on a indisputably meritless legal theory and also should be dismissed as frivolous and for failure to state a claim.

**VI.   Law Library**

Washington also contends that the defendants violated his right of access to the courts because he was not given access to the law library at Orleans Parish Prison. As noted above,

Washington submitted grievances regarding these issues. The grievances were deemed not grievable and therefore were not subject to review under the administrative grievance procedure or subject to the exhaustion requirement of the PLRA. The Court will consider the claims.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court articulated a "fundamental constitutional right of access to the courts," which requires prison officials to guarantee prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. *Bounds*, 430 U.S. at 828; *Lewis v. Casey*, 518 U.S. 343, 350 (1996). However, "restrictions on direct access to legal materials may be warranted when prison security is involved." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1994). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Eason*, 73 F.3d at 1328 (citing *Brewer*, 3 F.3d at 821). The right, therefore, is limited to "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis*, 518 U.S. at 356.

In this case, Washington claims that he was denied access to adequate legal material or a law library. Nevertheless, even accepting his claims as true, Washington's ability to access the courts has not been impeded or prejudiced as evidenced by the fact that the Court is currently considering his civil rights claims. *See e.g. Featherman v. DiGiacinto*, 617 F. Supp. 431 (E.D. Pa. 1985) (a prisoner who filed a lengthy and multifaceted federal civil rights complaint regarding placement and conditions in administrative segregation could not therein complain of denial of access to courts or law library, since complaint itself demonstrated otherwise); *Brown v Sielaff*, 363 F. Supp. 703 (W.D. Pa. 1973) (a review of the record was conclusive to prove that the prisoners had freely filed actions

and taken appeals of their particular causes of action and had thus not been denied access to the federal courts.)

In addition, there are no grievances indicating that he complained that the library was inadequate. Washington has not pointed to any legal proceeding which suffered prejudice as a result of the legal materials available at the prison. *Lewis*, 518 U.S. at 351; *Eason*, 73 F.3d at 1328; *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (citing *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992)).

Consequently, Washington's claim of denial of the right of access to the courts through the alleged denial of an adequate law library is frivolous and fails to state a claim for which relief can be granted.

## VII.   Free Exercise

In his Complaint, Washington also generally asserts a claim under the Free Exercise Clause. However, Washington has provided no facts to support his claim. The only reference to religion was made in Grievance number 618862 in which Washington indicated that he would like to be able to "process [sic] his religion in a D.O.C. church." Washington makes no claim that he has been prevented from practicing his religion at O.P.P. Instead, he merely indicates that he would like the opportunity to worship in a D.O.C. church. Because Washington has failed to provide any basis which would support a claim under the Free Exercise clause, the Court finds that this claim should also be dismissed.

## VIII.   Recommendation

It is therefore **RECOMMENDED** that Washington's § 1983 claims against Sheriff Gusman and Richard Stalder be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a

claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e)(2) and § 1915A and Title 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 14th day of February, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.